IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CALVIN LEON MASSEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  2:12-CV-101-WHA |
| | ) | [WO] |
| QUALITY CORRECTIONAL | ) | |
| HEALTHCARE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*        \*        \*        \*        \*

| | | |
|---|---|---|
| CALVIN LEE MASSEY, #155 562, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:12-CV-526-WHA |
| | ) | [WO] |
| DOCTOR TATUM McARTHUR, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

In this 42 U.S.C. § 1983 action, Plaintiff challenges the medical care and treatment

provided to him in October 2011 during his incarceration at the Montgomery County

Detention Facility in Montgomery, Alabama.[1] Specifically, Plaintiff complains Defendants

denied him adequate medical care for pneumonia and a partially collapsed lung. Plaintiff also

claims that Defendants exhibited  deliberate indifferent to his health and safety by failing to

---

[1] Plaintiff's complaints were consolidated by order entered September 11, 2013. *Doc. No. 40.*

house him in a "disease-free environment" which subjected him to exposure to Tuberculosis ["TB"]. Named as defendants are Quality Correctional Health Care, Inc., ["QCHC"], Nurse Kimberly Barefield, Nurse Sharon Thompson, Dr. Jerry Gurley, and Dr. Tatum McArthur. Plaintiff seeks damages for the alleged violations of his constitutional rights. *Doc. No. 1*, Civil Action No. 2:12-CV-101-WHA; *Doc. Nos. 1, 6*, Civil Action No. 2:12-CV-526-WHA.

In accordance with the orders of the court, Defendants QCHC, Barefield, and Gurley ["the medical defendants"] filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. The court then informed Plaintiff that the medical defendants' special report, may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. Plaintiff filed responses to the special report. This case is now pending on the medical defendants' motion for summary judgment. Upon consideration of the motion, Plaintiff's opposition to the motion, and the supporting and opposing evidentiary materials, the court concludes that the motion for summary judgment filed by the medical defendants is due to be granted.[2]

---

[2]The court notes that notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case, or any portion thereof, at any time if the court determines that, among other things, the action/claim is frivolous or malicious or fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(i) & (ii). The court previously approved Plaintiff to proceed *in forma pauperis*. *See* Civil Action No. 2:12-CV-101-WHA, *Doc. No. 3*, and Civil Action No. 2:12-CV-526-WHA, *Doc. No. 3*. Although Defendants McArthur and Thompson were not served with the complaint, *see* Civil Action No. 2:12-CV-525-WHA, *Doc. No. 11*, based on the complaints, amendment thereto, and supporting exhibits, as well as the evidence of record in this consolidated proceeding, the court finds it appropriate to recommend dismissal of Plaintiff's claims against these defendants under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state

# I. STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The medical defendants have met their evidentiary burden and demonstrated the

---

a constitutional claim  for deliberate indifference to a serious medical need.

[3] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id.*  "'Shall' is also restored to express the direction to grant summary judgment." *Id.*  Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

absence of any genuine dispute of material fact.  Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.")  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*.  "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-250 (internal citations omitted).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).  Conclusory allegations based on

subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the*

*Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) (internal citations omitted).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.);   *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11ᵗʰ Cir. 1990).  Thus, Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.  In this case, Plaintiff fails to demonstrate a requisite genuine dispute of material fact in order to preclude the medical defendants' motion for summary judgment.

## II.  DISCUSSION

*A. The Complaints*

Plaintiff asserts an Eighth Amendment violation against Defendants claiming they were deliberately indifferent to his serious medical needs. Plaintiff's complaints, amendment thereto, and supporting exhibits reflect that he signed up for sick call on October 3, 2011. Nurse Barefield examined Plaintiff on October 4, 2011, and prescribed him over-the-counter medication for a four day period.[4]  Because Plaintiff did not feel the medication was working he submitted another sick call request on October 7, 2011. He saw Nurse Thompson on October 8, 2011, and explained that he still had the same symptoms which he reported to Nurse Barefield on October 3, 2011.  According to Plaintiff, Nurse Thompson informed him that because he had not responded to the medication prescribed by Nurse Barefield and complained of the same symptoms, he would need to be seen by the detention facility

---

[4]Plaintiff states the medications he initially received to treat his reported symptoms included acetaminophen and chlorphenamine. *See* Civil Action No. 2:12-CV-526-WHA, *Document No. 6.*

physician. Nurse Thompson noted on Plaintiff's sick call slip that he wanted to see the doctor. Plaintiff acknowledge this desired course of action by signing his name underneath Nurse Thompson's notation.  Plaintiff underwent a chest x-ray for his complaints of a persistent cough, shortness of breath, and a wheezing sound in his chest.  Dr. McArthur interpreted the x-ray a copy of which Dr. Gurley received on October 13, 2011. A decision was made to admit Plaintiff to the infirmary for treatment of his condition on October 13, 2011. Later that same day Plaintiff was transported to Jackson Hospital for further treatment. *See* Civil Action No. 2:12-CV-101-WHA, *Doc. No. 1,* Civil Action No. 2:12-CV-526-WHA, *Doc. Nos. 1, 6 (including exhibits), & 7.*

B.  *The Medical Claim*

    *I. Immunity*

    Plaintiff brings this suit against the medical defendants in their individual and official capacities. *See* Civil Action No. 12-CV-101-WHA,  *Doc. No. 19.* These defendants assert they are entitled to sovereign immunity in their official capacities and qualified immunity in their individual capacities.  *Doc. No. 15.* Alabama officials are immune from claims brought against them in their official capacities for monetary damages because the State is the real party in interest. *Lancaster v. Monroe Cnty., Ala.,* 116 F.3d 1419, 1429 (11th Cir. 1997). QCHC is a private corporation which contracts with the Montgomery County Detention Facility to provide medical care and services to inmates in their custody and Defendants Gurley and Barley are employees of QCHC. There being no indication that these defendants

are state officials, they are not entitled to sovereign immunity.

Regarding the medical defendants assertion that they are entitled to qualified immunity, *Doc. No. 15*, the Eleventh Circuit, relying upon the Supreme Court's reasoning in *Richardson v. McKnight*, 521 U.S. 399 (1997), which declined to extend qualified immunity to privately employed prison guards, held that qualified immunity may not be extended to privately employed prison personnel. *See Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999), *opinion amended by* 205 F.3d 1264 (11th Cir. 2000); *see also Swann v. Southern Health Partners, Inc.,* 388 F.3d 834, 837 (11th Cir.2004) ("The parties agree that as a private entity, SHP [a private corporation employed by the County to provide medical care to inmates at the county jail] is not entitled to assert a qualified immunity defense."). Accordingly, the medicals defendants are not entitled to summary judgment on qualified immunity grounds.

   *ii.   QCHC*

To the extent Plaintiff seeks to state a claim against QCHC based on the conduct of its employees, such claim is due to be dismissed. Plaintiff cannot state a claim for relief against a corporation based on the actions of its employees. Specifically, while a corporation providing prison medical services may be liable under § 1983 if it is established that the constitutional violation was the result of the corporation's policy or custom, such a corporation may not be held liable under § 1983 on the basis of *respondeat superior*. *See Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir.1992); *Buckner v. Toro*, 116 F.3d 450

(11th Cir.1986); *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658 (1978). Instead, a plaintiff must allege that the corporation has a policy, practice, or custom that represents official policy that resulted in the alleged discouragement, delay, or denial of medical treatment to inmates so as to deny a plaintiff his constitutional rights. *See Berdin v. Duggan*, 701 F.2d 909, 914 (11th Cir.1983). A plaintiff must also specifically identify which policy or practice, if any, caused his injuries as a mere blanket assertion that a policy or practice existed is insufficient. *See Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir.1999).

Plaintiff fails to allege in his complaint that any policy or custom of QCHC contributed in any way to the claimed constitutional violations. Defendant QCHC is, therefore, due to be granted summary judgment.[5]

### iii. Dr. Gurley and Nurse Barefield

Dr. Gurley and Nurse Barefield deny they acted with deliberate indifference to Plaintiff's medical needs. Rather, they maintain that they provided Plaintiff with all necessary treatment and medication for his complaints.[6] The specific treatment prescribed

---

[5] At one point in his opposition Plaintiff conclusorily asserts that he was not housed in a disease-free environment at the detention facility because QCHC fails to test incoming inmates. *Doc. Nos. 17, 29*. The court notes, however, that a plaintiff may may not amend his claim through his opposition. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314–15 (11th Cir. 2004

[6] The medical defendants indicate Plaintiff was a pretrial detainee at the county jail at the time the actions about which he complains occurred. *Doc. No. 15*. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861 (1979); *Lancaster v. Monroe County, Ala.*, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997); *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause...."). For analytical purposes, however, there is no meaningful difference between the analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985);

depended upon the observations and evaluations of Plaintiff's condition by the attending health care professional. *Doc. No. 15, Gurley and Barefield Affidavits.*

To prevail in a suit based on an Eighth Amendment claim about medical attention, an inmate must show at a minimum that correctional or medical officials have acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Aldridge v. Montgomery*, 753 F.2d 970, 972 (11th Cir. 1985). "Because society does not expect that inmates will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Estelle* 429 U.S. at 103-104). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir.1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

When seeking relief based on deliberate indifference of prison medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual

---

*Cottrell*, 85 F3d at 1490 ("[T]he applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees."). Thus, this court's reliance on cases interpreting the Eighth Amendment's prohibition against cruel and unusual punishment when addressing Plaintiff's medical treatment and conditions of confinement claims is appropriate regardless of his status at the Montgomery County Detention Facility at the time the incident about which he complains occurred. *See Tittle v. Jefferson County Commission*, 10 F.3d 1535, 1539 (11th Cir. 1994) (observing "[w]hether the alleged violation is reviewed under the Eighth or Fourteenth Amendment is immaterial.").

inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986).   Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).   Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787.   Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted).   Mere incidents of negligence or malpractice do not rise to the level of constitutional violations.   *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to

constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle*, 429 U.S. at 107).

To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer,* 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991).... Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  Thus, to survive summary judgment on his claim of deliberate indifference, Plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The undisputed evidence reflects that Plaintiff received an initial health assessment

at the county jail on September 29, 2010. Prior to his October 3, 2011, sick call request, Plaintiff had submitted only one prior request for medical care in September 2011 which was resolved by facility dental personnel. Nurse Barefield saw Plaintiff on October 4, 2011, for his complaints of a cough, runny nose, nasal discharge, and headaches. She performed a nursing assessment which revealed that Plaintiff's vital signs were within normal limits. Plaintiff exhibited no signs or symptoms of acute distress.  Nurse Barefield prescribed Plaintiff medication per nursing protocol for his presenting symptoms and instructed him to submit another sick call slip if he did not begin to feel better.  *Doc. No. 15, Gurley and Barefield Affidavits, Exhibit - Medical Records*.

On October 7, 2011, Plaintiff submitted a sick call slip indicating he had received a four day supply of medication for a cough but the symptom had  not resolved and was present whether he was lying down or standing. Plaintiff was seen on October 8, 2011, by Nurse Thompson in response to this request. On  Plaintiff's sick call slip Nurse Thompson entered a notation that Plaintiff wished to be seen by a physician.  Plaintiff acknowledged this request for a physician evaluation by signing his name under this notation. Pursuant to his request, Plaintiff received an examination by Dr. Gurley on October 10, 2011. Plaintiff complained of a  cough lasting two weeks. Upon examination Plaintiff was found to have no fever,  some diminished breath sounds were detected on the left side of the posterior aspect of his chest, he had  no rales or rhonci, his throat was clear, he had no post-nasal drainage, and his heart was a normal sinus rhythm. Dr. Gurley's assessment indicated that  Plaintiff could possibly

have bronchitis. The doctor ordered  a chest x-ray and prescribed Plaintiff antibiotics, antihistimines, and Tylenol. *Doc. No. 15, Gurley Affidavit, Exhibit - Medical Records*.

Dr. McArthur provided the interpretation of Plaintiff's chest x-ray for QCHC. Dr. Gurley received the completed x-ray on October 13, 2011. The x-ray report indicated Plaintiff had a left pleural effusion, and left lower lobe pneumonia. Although the report also indicated complete collapse of the lower left lung, Dr. Gurley states that was never supported. The same day the chest x-ray report was received, Dr. Gurley consulted with Dr. Bates, another physician at the county detention facility. They discussed potential treatment options and a decision was made to place Plaintiff in the infirmary for treatment. Once in the infirmary, Plaintiff asked to see Dr. Gurley who examined him and found he had no shortness of breath, no dyspnea on exertion, and no chest pain. Plaintiff was still coughing and Dr. Gurley again noticed decreased breath sounds on the left posterior chest. Based on this examination, Dr. Gurley believed Plaintiff had pneumonia of the left lung with a pleural effusion. An initial treatment was started for him in the infirmary and orders were placed after consultation with Dr. Bates. A TB skin test was also ordered. Medical personnel experienced problems starting Plaintiff's IV.  Plaintiff complained of being very sick and he had a low grade fever of 99.4.  Because of the difficulty initiating appropriate care, Dr. Bates was notified and, after consulting with the nursing staff, Plaintiff was referred to the Jackson Hospital Emergency Room.[7]  *Doc. No. 15, Gurley Affidavit, Exhibit - Medical Records*.

---

[7]On admission to the emergency room at Jackson Hospital, medical personnel's review of systems reflected Plaintiff complained of chest pain and cough but had no shortness of breath, fever, or chills despite

Plaintiff remained at Jackson Hospital from October 13, 2011, until October 25, 2011. The final diagnosis from the hospital reflected Plaintiff was treated for left lower lobe pneumonia, pleural effusion. His chest x-rays did not suggest he had TB and his sputum cultures were negative. He underwent a video thoracoscopy, a decortication procedure, and a left chest tube placement. A finding of granulomatous inflammation was made without any evidence of AFB (TB).[8] *Doc. No. 15, Gurley Affidavit, Exhibit - Medical Records.*

The affidavits filed by Dr. Gurley and Nurse Barefield address the claims made by Plaintiff alleging a lack of adequate medical treatment. A careful review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective medical records compiled contemporaneously with treatment provided to Plaintiff relative to his claims of deliberate indifference. These evidentiary materials refute the self-serving, conclusory allegations set forth by Plaintiff.

Under the circumstances of this case, the court concludes that the course of treatment undertaken by Dr. Gurley and Nurse Barefield in addressing Plaintiff's medical condition did not violate his constitutional rights. These defendants' course of treatment shows a good-faith effort by detention facility medical staff to address Plaintiff's medical needs. The

---

his complaints regarding the latter two symptoms. *Doc. No. 15, Exhibit - Medical Records.*

[8]Following Plaintiff's release from Jackson Hospital medical personnel at the detention facility determined that the initial TB test requested had never been performed. On October 27, 2011, another order for a TB skin test was requested.  This skin test, which was completed and read three days later, tested positive for TB. Dr. Gurley noted an area of positivity measuring 16 mm on October 31, 2011.  Plaintiff was placed in a negative pressure cell in the infirmary, and he was immediately started on TB medication. Medical personnel at the detention facility notified the Alabama Department of Public Health of the positive TB skin test. *Doc. No. 15, Gurley Affidavit and Exhibits - Medical Records.*

medical care he received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Even assuming, *arguendo*, that Dr. Gurley and Nurse Barefield delayed treatment for Plaintiff, there is no verifying medical evidence which establishes that this delay resulted in any detriment to him. *See Hill*, 40 F.3d at 1187–89. Further, the fact that an inmate feels that he did not get the level of medical attention he preferred or desired does not, as a matter of law, constitute deliberate indifference. "[T]he essential test is one of medical necessity and not one simply of desirability." *Woodall v. Foti*, 648 F.2d 268, 272 (5th Cir.1981) (citation omitted); *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545–1546 (an inmate's allegation that prison physicians did not diligently pursue alternative means of treating condition did not rise beyond negligence to the level of deliberate indifference); *Hamm v. DeKalb Cnty*, 774 F.2d 1567, 1575 (11th Cir. 1985) (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Plaintiff received treatment for his medical condition and had access to detention facility medical personnel during his confinement at the jail. It is likewise evident that Dr. Gurley and Nurse Barefield rendered treatment to Plaintiff in accordance

with their professional judgment. Moreover, Plaintiff has failed to present any evidence which indicates these defendants knew that the manner in which they provided treatment created a substantial risk to his health and that with this knowledge consciously disregarded such risk. *See Johnson*, 145 F.3d at 168. The record contains no evidence, significantly probative or otherwise, showing that Dr. Gurley or Nurse Barefield acted with deliberate indifference to Plaintiff's medical needs. Consequently, the medical defendants are due to granted summary judgment on this claim. *Carter*, 352 F.3d at 1350.

    *iv.  Nurse Thompson*

    Plaintiff alleges that Nurse Thompson saw him on October 8, 2011, in response to a sick call slip he submitted on October 7, 2011. He informed her his symptoms were unchanged since being seen by medical personnel within the past three to four days. Based on this information, Nurse Thompson informed Plaintiff that she could not do anything more for him as he was complaining of the same symptoms for which another nurse had recently seen and treated him for including the prescription of medication.  Nurse Thompson documented Plaintiff's request that he be examined by a physician. Plaintiff complains, however, that Nurse Thompson should have called a "higher up" immediately because she could see his condition was worsening. Plaintiff further claims that after he was placed in the infirmary on October 13, 2011, Nurse Thompson could again see his condition was worsening. He complains, however, that medical personnel continued attempts to treat him at the jail for several hours until a decision was made by the facility doctor to send him to an

outside hospital.  *See* Civil Action No. 2:12-CV-526-WHA*, Doc. Nos. 1, 6 (including attachments), & 7.*

Accepting Plaintiff's allegations that the conditions he presented to Nurse Thompson reflected a serious medical need, he nonetheless fails to establish deliberate indifference to that need because he admits to  receiving medical attention for his symptoms from Nurse Thompson and other detention facility medical staff as well. Plaintiff's complaint against this defendant, as amended, including supporting exhibits, shows she did provide medical attention in response to Plaintiff's request and/or as directed by a physician. Nurse Thompson did not refuse to see Plaintiff regarding his request for medical care, she acknowledged his request to be seen by a physician for his condition, and she followed up by making arrangements for him to be examined by a doctor. Nurse Thompson also administered medical care to Plaintiff after he was placed in the infirmary until his transfer to a free world hospital. *See* Civil Action No. 2:12-CV-526-WHA*, Doc. Nos. 1, 6 (including attachments), & 7.*

While Plaintiff complains Nurse Thompson did not immediately arrange for him to be seen by a physician after she examined him on October 8, 2011, and also attributes to Nurse Thompson a delay in his transfer to a free world hospital, he has not shown these delays amount to a constitutional violation. Plaintiff's pleadings and supporting evidentiary material do not reflect a callous disregard by Nurse Thompson for Plaintiff's medical condition or that she engaged in any conduct which delayed treatment for non-medical

reasons. *See Hill*, 40 F.3d at 1187–89. To the extent Plaintiff believes Nurse Thompson's conduct and/or responses were inappropriate or inadequate, the law is settled that a medical professional's choice of treatment and/or testing is a matter of medical judgment and does not state an Eighth Amendment deliberate indifference claim. *See Estelle*, 429 U.S. at 107. Plaintiff's factual allegations against Nurse Thompson also do not establish that any errors made in addressing and/or treating his condition amounted to anything more than negligence which is insufficient to state a claim for deliberate indifference. *Id*. at 106. Further, the fact that a medical official provides medical care that is different from that which an inmate desires, *Hamm*, 774 F.2d at 1565, or the fact that an inmate has difference of opinion as to how his condition should be treated, *Garvin*, 236 F.3d at 898, does not give rise to a constitutional violation. Because Plaintiff's complaint, as amended, against Nurse Thompson fails to state a constitutional claim for deliberate indifference to a serious medical need, his complaint against this defendant is due to be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

   *v. Defendant McArthur*

   Plaintiff files this action against Dr. McArthur claiming that she failed to order that he be sent to a free world hospital after interpreting his chest x-ray and learning of his condition. *See* Civil Action No. 2:12-CV-526-WHA, *Doc. Nos. 1, 6 (including attachments)*. According to the pleadings before the court, Dr. McArthur is not an employee of QCHC. Rather, on occasion she reads x-rays for QCHC. *See Id., Doc. No. 11*. Plaintiff contends that because Dr. McArthur performed some medical work for QCHC she was employed by this

entity. *Id.* at *Doc. No. 16*.

To state a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). A private physician who is not employed by or under contract with the state does not act under color of state law merely because the physician treats a  prisoner at a private medical institution or provides a medical service to a penal institution. *See Id*. at 56 n. 15 (private individuals are not converted to state actors merely because the State pays for their services or regulates them in some way as source of payment not dispositive of state action; rather, it is "the context in which [the physician] performs the services for the State ..." which determines the nature of the action).

Here, there are  no specific allegations of fact showing that Dr. McArthur was employed by or under contract with the Montgomery County Detention Facility to provide medical care or services to  inmates at the time of the events made the basis of Plaintiff's claims. Therefore, she cannot be held liable under § 1983 simply based upon her alleged maltreatment of Plaintiff.

Even if Plaintiff's bare allegation against Dr. McArthur is enough to show state action, he has not presented factual allegations against this defendant which rise to the level of deliberate indifference on her part. As previously explained, courts have long held that the appropriateness of a certain course of medical treatment are matters of medical judgment

which do not give rise to a § 1983 claim. *See Estelle*, 429 U.S. at 107, ("[T]he question whether ... additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); *Smith v. Florida Dep't of Corrections*, 375 Fed.Appx. 905, 910 (11th Cir. 2010) (inmate's disagreement with prison medical staff concerning the course of treatment did not support deliberate indifference). Plaintiff's claim against Dr. McArthur reflects no more than his disagreement with the course of his medical care. Beyond Plaintiff's conclusory assertion that, following Dr. McArthur's interpretation of his chest x-ray, she should have ordered a specific course of action regarding his medical care and treatment, this general contention is bare of factual content from which one might reasonably infer that this defendant's actions emanated from something other than her professional medical judgment and expertise. *See Hamm*, 774 F.2d at 1576. Such course of treatment claims, by definition, involve the exercise of professional judgment and, as such, are not actionable. *Estelle*, 429 U.S. at 107. Accordingly, Plaintiff's complaint, as amended, against Dr. McArthur fails to state a constitutional claim for deliberate indifference to a serious medical need and his claim against this defendant is due to be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.  The Conditions Claim

Plaintiff complains that he was not housed in a disease-free environment. Specifically, Plaintiff maintains that when he entered the Montgomery County Detention Facility in September 2010 he was free of disease, but on November 8, 2011, the Montgomery County

Health Department confirmed he had contracted tuberculosis from the community acquired pneumonia. *Doc. No. 1*, Civil Action No. 2:12-CV-101-WHA.

The medical defendants deny that they exhibited deliberate indifferent to Plaintiff's health and safety by exposing him to an environment which was not free of active TB thereby causing him to acquire the infection at some point after he entered the detention facility. Dr. Gurley affirms that as of the date he signed his affidavit in support of his dispositive motion there had been no known active TB cases at the detention facility for at least three years.[9] *Doc. No. 15*, Civil Action No. 2:12-CV-101-WHA

The Eighth Amendment's prohibition on cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" that is "totally without penological justification." *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (internal quotations and citations omitted). In the Eighth Amendment context there is no "static test" for determining which conditions violate the Constitution. *See Rhodes v. Chapman,* 452 U.S. 337, 346 (1981). Rather, review of Plaintiff's Eighth Amendment claim requires analysis of two components. That is, whether a violation exists requires a determination of what conditions exist and whether objectively and subjectively the conditions offend the Constitution by amounting to seriously sufficient deprivations to which officials were deliberately indifferent. *See, e.g. Farmer,* 511 U.S. at 834 (1994); *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).

Regarding the objective component, an inmate must first show "an objectively

---

[9]Dr. Gurley signed his affidavit on March 16, 2012. *Doc. No. 15, Gurley Affidavit*. Plaintiff entered the Montgomery County Detention Facility in September 2010. *Doc. No. 1*.

substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-1029 (2001) (internal citations omitted).  On the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . .The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . .  [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837-838; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th

Cir. 1990) (citations and internal quotations omitted).

Objectively speaking, in a prison setting, exposure to TB is a serious condition of confinement. Assuming, *arguendo*, that Plaintiff was, in fact, exposed to TB at some point after he entered the detention facility, he has failed to allege any facts tending to support a claim that cases of TB at the jail are ignored or disregarded. Rather, upon learning that Plaintiff tested positive for TB, medical staff at the detention facility initiated appropriate medical care which included moving him to a negative pressure cell in the infirmary and starting him on TB medication. Medical staff at the jail notified the Alabama Department of Public Health about Plaintiff's positive skin test.  The Health Department made their initial evaluation on November 8, 2011, and began their TB protocol and medications which were followed and administered by the nursing staff at the detention facility.  *Doc. No. 15, Gurley Affidavit, Exhibits - Medical Records*.

Here, Plaintiff fails to produce any evidence which shows the medical defendants knew that an active case of TB was present at the Montgomery County Detention Facility and then that they deliberately disregarded the risk posed to inmates as well as employees of the jail. *See Whitley*, 475 U.S. at 319. The record is  devoid of evidence that the medical defendants had knowledge of specific facts from which an inference could be drawn that a substantial risk of harm existed to Plaintiff regarding possible exposure to TB, that any medical defendant drew this inference and thereafter ignored this risk. Because Plaintiff has failed to demonstrate that he is entitled to relief on this Eighth Amendment claim, the

medical defendants are entitled to summary judgment. *McElligott*, 182 F.3d at 1255; *see also*

*Carter*, 352 F.3d at 1349-1350.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.   Defendants' motion for summary judgment (*Doc. No. 15*) be GRANTED;

2.    Plaintiff's complaint, as amended, against Defendants McArthur and Thompson

be dismissed with prejudice in accordance with the provisions of 28 U.S.C. §

1915(e)(2)(B)(ii).

3.   Judgment be entered in favor of Defendants and against Plaintiff;

4.   This case be DISMISSED with prejudice.

It is further

ORDERED that on or before **February 17, 2015**, the parties may file an objection to

the Recommendation.   Any objection filed must specifically identify the findings in the

Magistrate Judge's Recommendation to which a party objects.   Frivolous, conclusive or

general objections will not be considered by the District Court.   The parties are advised  this

Recommendation is not a final order and, therefore, it is not appealable.

Failure to file a written objection to the proposed findings and advisements in the

Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

District Court of issues covered in the Recommendation and shall bar the party from

attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done, this 30th  day of January 2015.


 /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE